IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| VS. | § | NO. 3:26-cr-00211-N-1 |
| | § | |
| LONTRELL WILLIAMS, JR. | § | |

**DEFENDANT'S MOTION FOR *DE NOVO* REVIEW OF
MAGISTRATE JUDGE'S DETENTION ORDER AND
<u>MOTION FOR RELEASE ON CONDITIONS</u>**

TO THE HONORABLE SENIOR JUDGE DAVID C. GODBEY, UNITED STATES
DISTRICT JUDGE FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS
DIVISION:

Defendant Lontrell Williams, Jr., by and through undersigned counsel, respectfully

moves this Court pursuant to 18 U.S.C. § 3145(b) for de novo review of the Detention

Order entered by United States Magistrate Judge Renee Harris Toliver on April 8, 2026,

and for an order releasing Mr. Williams on appropriate conditions pending trial. In support

thereof, Mr. Williams states as follows:

## I. INTRODUCTION

Lontrell Williams, Jr. is a recording artist charged in a four-count Indictment with

Conspiracy to Commit Kidnapping and Kidnapping under 18 U.S.C. § 1201, and

Conspiracy to Commit Extortion and Extortion under the Hobbs Act, 18 U.S.C. § 1951.

He was arrested on April 1, 2026, nearly three months after the alleged incident, and was

later indicted on April 28, 2026. Throughout that entire period, he was on electronic

monitoring, his location was known to law enforcement around the clock, and he did

1

nothing to evade scrutiny. He made every check-in. He passed every drug test. He did not run.

The Magistrate Judge ordered detention for four reasons: (1) that the weight of evidence against Mr. Williams is strong, (2) that Mr. Williams poses a danger to the community, (3) that he poses a flight risk, and (4) that no conditions can adequately protect against those concerns.  None of those findings holds up.  The evidence in this case is a single victim's uncorroborated account, given to Dallas police on the night in question, by a complainant who has since gone on social media to deny that any of it happened. The crux of the complaint is that Mr. Williams forcibly made the complaint to sign a release, which would effectively let him out of his contract with the complainant. Despite the lengthy investigation, no guns were recovered, no signed contract release was found, no audio or video evidence exists, and no conspiratorial communications of any kind were offered into evidence.  Moreover, there is a serious, well- briefed question whether this incident is a federal crime at all. This Court should review the detention order *de novo*, find that the Government has not met its burden, and release Mr. Williams on conditions.

## II. STANDARD OF REVIEW

A defendant may move to revoke or amend a magistrate judge's detention order before the district court under 18 U.S.C. § 3145(b).  Review is *de novo*. *United States v. Rueben*, 974 F.2d 580, 585 (5th Cir. 1992). This Court is not bound by the Magistrate Judge's findings and makes its own independent determination of whether detention is warranted.  *Id*. The Government must prove by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of any other

person and the community.  18 U.S.C. § 3142(f).  On flight risk, the standard is by a preponderance of the evidence. *United States v. Fortna*, 769 F.2d 243, 250 (5th Cir. 1985).

There is no presumption of detention here.  Kidnapping, conspiracy to kidnap, and Hobbs Act offenses are not among the enumerated offenses in 18 U.S.C. § 3142(e)(3) that trigger a presumption in favor of detention.  *United States v. Garay*, CR No. 21-CR-00062-JJM-03, 2024 WL 1240518, at *1 (D. R.I. Mar. 22, 2024) ("The three drug trafficking offenses carry the rebuttable presumption that no condition or combination of conditions will reasonably assure public safety or the appearance of Defendant; the kidnapping offense does not. 18 U.S.C. § 3142(e)(3)(A)."); *United States v. Simone*, 317 F. Supp.2d 38, 42 (D. Mass. 2004) ("Pretrial detention must be considered for Gioacchini because he faces RICO and Hobbs Act extortion charges, among others. As the government acknowledged at the February 24, 2004 hearing, the charges against Simone and Gioacchini do not invoke the rebuttable presumption favoring detention established in certain circumstances by 18 U.S.C. § 3142(e).").  The Government carries its full burden from the outset, without any thumb on the scale.

### III. THE CHARGED OFFENSES ARE SUBJECT TO A SUBSTANTIAL JURISDICTIONAL CHALLENGE

The strength of the evidence against a defendant is a detention factor under 18 U.S.C. § 3142(g)(2). That factor cannot be assessed in isolation from a genuine question whether the charged conduct constitutes a federal crime. Before this Court weighs the detention calculus, it should reckon with the real possibility that the Government cannot establish federal jurisdiction.

Federal kidnapping under 18 U.S.C. § 1201(a)(1) requires proof of an interstate commerce nexus. That requirement is not a technicality. The Fifth Circuit made clear in United States v. Meyer, 63 F.4th 1034 (5th Cir. 2023), that an offender's travel must be in furtherance of the commission of the offense, not merely travel that happened to precede it. Failing to establish that nexus is reversible error. Id. The Government's evidence on this point is thin at best.

Start with what is undisputed: Mr. Williams did not travel interstate. He lived in the Dallas area. The studio was local to him. The Government's interstate commerce theory depends entirely on the travel of the Memphis-based co-defendants, but the record is silent on when those individuals arrived in Dallas or why they came. Defense counsel pointed out at the hearing that they had reportedly been in the area for a week before the alleged incident. If that is true, their travel long predates any conspiratorial purpose and cannot satisfy Meyer's furtherance requirement. The Government never asked its own witness when those co-defendants arrived and that silence is telling.

The Government's backup theory, that R.D.'s cell phone constitutes an "instrumentality of interstate commerce" used during the offense, fares no better. The mere presence of a phone does not clear the jurisdictional bar of § 1201 absent evidence the phone itself was used across state lines in furtherance of the kidnapping. A phone in someone's face while a contract is allegedly signed at gunpoint, inside a recording studio in Dallas, is not interstate commerce.

No firearms were recovered. The Government's third potential nexus theory, firearms manufactured outside Texas, rests on nothing in evidence. The point for present

4

purposes is straightforward: where jurisdiction is genuinely contestable, the weight of the evidence cannot fairly be called strong.

## IV. THE WEIGHT OF THE EVIDENCE
## DOES NOT SUPPORT DETENTION

The Magistrate Judge found the weight of the evidence "strong." Tr. at 63. A fair reading of the record compels the opposite conclusion.

### A. The Entire Case Rests on a Single Witness Who Is Publicly Recanting

Strip away what the Government does not have and what remains is this: R.D. told Dallas police on the night of January 10th that Mr. Williams pulled a gun on him, forced him to sign a contract release, and robbed him of his jewelry. That statement, relayed through an FBI agent who was not present at the incident and who did not interview R.D. herself, is the sum total of the Government's case, as presented, on the core offense. Special Agent Hanson conceded on cross that the FBI has not taken a formal statement from any of the five alleged victims in the four months since the incident.

More damaging still, R.D., the man at the center of this case, has gone on social media and denied that any of this occurred. He has posted videos repudiating the Government's account and, according to defense counsel's unchallenged representation to the Magistrate Judge, has displayed the allegedly stolen jewelry as if it were still in his possession. Agent Hanson did not know about these posts and confirmed that no one from the FBI had spoken to R.D. after they appeared.

A complaining witness publicly recanting the offense is not a minor evidentiary wrinkle. It is a fundamental problem. The Government is asking this Court to detain a man

based on conduct that the Government's own complaining witness is denying took place. That is not a strong case. It is a case in serious trouble.

## B. The Physical Evidence Does Not Exist

Agent Hanson acknowledged the following on cross-examination: No firearm has been recovered. The contract release has not been recovered. The video recording of R.D.'s alleged verbal release has not been recovered. No communications, whether texts, calls, DMs, or any other form, establishing a pre-planned conspiracy have been identified. The only physical evidence connecting the alleged scheme to advance preparation is a Staples receipt for a print job, which is alleged to have been the mysterious contract release; however no signed copy appears to exist.

The FBI executed search warrants on Mr. Williams' apartment at arrest. They found no firearms. They found no stolen jewelry. They found no contract release. Three months of investigation, and the cupboard is bare.

## C. The Complaint Itself Contains a Factual Error the Government Has Not Corrected

The Criminal Complaint misplaces the alleged gun display. It describes the firearm being produced inside the Control Room. Agent Hanson conceded on cross that this is wrong; the alleged incident occurred inside the recording studio, a different room. This is not a trivial distinction, because the Control Room and studio are separated by a wall and a window, and the location of the gun matters to the corroboration analysis. That the Complaint contains a factual error about the location of the central alleged act, and that

6

four months have passed without anyone correcting it, speaks to the care with which this case was assembled.

## V. MR. WILLIAMS DOES NOT
## POSE A DANGER TO THE COMMUNITY

The Government must prove by clear and convincing evidence that no condition of release will protect the community. The Government's own conduct over the three months following the alleged offense tells this Court what the Government actually believed.

### A. The Government's Three-Month Delay Undermines Its Dangerousness Claim

The FBI knew about this alleged offense on the night it occurred. Mr. Williams was on electronic monitoring. His address was known. His movements were tracked by ankle bracelet. The Government did nothing. No arrest. No surveillance. No traffic stops. No knock on the door. Agent Hanson confirmed that the FBI conducted no physical surveillance on Mr. Williams during the three months between the alleged offense and his arrest, and offered no explanation beyond a lack of resources.

Courts have recognized that a government which allows a supposedly dangerous defendant to move freely for months, while knowing exactly where he is, has a hard time persuading a reviewing court that his release now poses a grave public danger.  The Government cannot have it both ways: if Mr. Williams was truly the violent threat the Government now portrays, the decision to leave him unsupervised in the community for eighty days is inexplicable. If that decision was reasonable, then the Government's current dangerousness argument is overstated.

7

**B. His Conduct Since Release From BOP Speaks for Itself**

Mr. Williams was released from federal custody in October 2025 after serving 63 months. In the months that followed:

- He reported for every required urinalysis. He never tested positive.
- He complied with all conditions of home detention without exception.
- When this investigation became known to him, on the very night of January 10th, he did not cut off his ankle monitor or attempt to flee. He stayed. He reported. He continued complying for the next eighty days.
- He completed the Residential Drug Abuse Program during his prior incarceration.

That is the conduct of a man who takes his obligations seriously, not someone who needs to be locked up to protect the public.

**C. No Weapons Were Found**

The Government searched Mr. Williams' apartment at the time of arrest. Whatever they expected to find, they found no firearms, no stolen jewelry, and nothing that could be tied to the January 10th incident beyond some electronic devices whose evidentiary value the Government itself could not assess. For a man the Government characterizes as having brandished a Draco-style pistol in a kidnapping scheme, the absence of any weapon at his home is significant.

## VI. MR. WILLIAMS IS NOT A FLIGHT RISK

The Government's flight risk case amounts to this: he faces significant time if convicted. That argument could be made about any defendant in a serious federal case. Without more, it does not satisfy even a preponderance standard.

The record actually shows the opposite of a flight risk. When Mr. Williams was charged in federal court in Miami on a case where the Government sought ten years or more, he surrendered voluntarily. He was sentenced to sixty three months and was released on home detention in October 2025, and although he was the target of a federal kidnapping investigation, less than three months later, he did not run. He had every opportunity and, by the Government's own account, had the financial resources to disappear if he chose to. He did not choose to.

He has never missed a court date. He has never failed a supervision check-in. He has never attempted to evade law enforcement. As the Fifth Circuit has observed, the mere fact that a defendant faces a serious sentence, without more, cannot carry a flight risk finding. The Government has offered nothing beyond that here.

## VII. CONDITIONS SHORT OF DETENTION WILL ADEQUATELY PROTECT THE COMMUNITY AND ASSURE APPEARANCE

The Bail Reform Act directs release on the least restrictive conditions consistent with community safety and court appearance. 18 U.S.C. § 3142(c). The Magistrate Judge rejected the proposed conditions on the ground that Mr. Williams was already under home detention when the alleged offense occurred. That reasoning misses the point. The question is not whether prior conditions were sufficient. The question is whether the conditions now proposed, which are materially more rigorous, would be.

Mr. Williams proposes the following:

- 24-hour home confinement with continuous GPS electronic monitoring;
- Third-party custodial supervision by a retired FBI Special Agent and a retired DEA Special Agent, retained by and reporting to defense counsel, with reporting

9

to this Court at whatever frequency the Court requires, whether daily, weekly, or otherwise;

- Bond secured by up to eight real property interests;
- Surrender of all passports and travel documents;
- Travel restricted to the Northern District of Texas;
- No contact whatsoever with any alleged victim or co-defendant;
- Urinalysis testing on any schedule Pretrial Services directs;
- Pretrial Services supervision at the most intensive level available.

Private professional monitoring by former federal agents who answer to the Court is a meaningfully different supervisory environment than BOP administrative home detention managed remotely. Courts in this circuit have accepted similar arrangements in appropriate cases. Defense counsel has offered this framework in other matters and courts have found it workable. The combination of around-the-clock professional monitoring, secured bond, GPS tracking, and complete isolation from the alleged victims and co-defendants addresses every concern the Government has articulated. This Court should evaluate these conditions on their merits.

### VIII. THE MAGISTRATE'S RELIANCE ON THE PRIOR CONVICTION REQUIRES CONTEXT

The Magistrate Judge found the prior Florida conviction significant, characterizing it as involving "similarly" violent conduct with firearms. The conviction is a legitimate factor. But the full picture matters.

In that case, the sentencing judge heard the Government's narrative, found it not credible, and sentenced Mr. Williams to 63 months despite a Guidelines recommendation of ten years or more. That is not a routine downward variance. It reflects a judicial

10

determination that the Goverment's version of events was not to be taken at face value. Defense counsel is making a similar argument here: the Government's account of what happened on January 10th is unreliable, driven by a complainant who is now publicly contradicting it. The parallel is direct.

Mr. Williams has since served that sentence in full. He completed RDAP. He has been drug-free since release. The Bail Reform Act looks at the whole picture, and the whole picture here is a man who paid his debt, made no violations on supervision, and should not be detained a second time on the basis of allegations that his own accuser is disavowing.

One more thing that is relevant here. In looking at the Complaint itself, it alleges that during the January 10th incident, Mr. Williams told a co-defendant not to shoot one of the victims. Even though Mr. Williams does not concede that this event even occurred, if that allegation is to be credited, it cuts directly against the portrait of a recklessly violent man that the Government has painted. A person who intervenes to stop a shooting is not the person the Government is describing.

## IX. CONCLUSION

The Government knew of this alleged conduct on the night it is alleged to have occurred, yet waited nearly three months to file a complaint or make an arrest, all while Mr. Williams remained compliant, sober, and present. It has produced no physical evidence of the offense, no weapon, no contract release, no recording, and no conspiratorial communications. Its principal witness is publicly recanting. Its jurisdictional theory is contestable under clear Fifth Circuit authority. And it is asking this Court to detain a man on conditions it declined to enforce for eighty days when it had every opportunity to do so.

That is not a case for pretrial detention. Mr. Williams respectfully requests that this

Court:

- Conduct a de novo review of the Magistrate Judge's April 8, 2026 Detention Order;

- Permit Mr. Williams to call witnesses on his behalf;

- Find that the Government has failed to meet its burden under 18 U.S.C. § 3142(f) by clear and convincing evidence as to dangerousness, and by a preponderance of the evidence as to flight risk;

- Release Mr. Williams subject to the conditions set forth herein, or on such other conditions as this Court finds appropriate; and

- Grant any other relief this Court deems just and proper.

Respectfully submitted,

*s/ Kent A. Schaffer*
KENT A. SCHAFFER
Federal ID No. 3603
Texas Bar No. 17724300
1001 McKinney Street, Suite 1600
Houston, Texas 77002
Telephone: (713) 228-8500
kentschaffer@gmail.com

*s/ Dan L. Cogdell*
Dan L. Cogdell
Texas Bar No. 04501500
712 Main Street, Suite 2400
Houston, Texas 77002
Telephone: 713-426-2244
dan@cogdell-law.com

*s/ J. Anthony Osso*
J. Anthony Osso
Texas Bar No. 24113427
712 Main Street, Suite 2400
Houston, Texas 77002
Telephone: 713-426-2244
janthonyosso@cogdell-law.com

12

*s/ John M Helms, Jr.*
John M Helms, Jr. 09401001
Texas Bar No.  24113427
8100 John W Carpenter Frwy, Suite 200
Dallas, TX 75244
Telephone: 469-951-8496
john@johnhelmslaw.com

Attorneys for Defendant,
LONTRELL WILLIAMS, JR.

## CERTIFICATE OF CONFERENCE

Undersigned counsel has consulted with AUSA Robert Withers, counsel for the

government, who is opposed to this motion.

*/s/ Kent A. Schaffer*
KENT A. SCHAFFER

## CERTIFICATE OF SERVICE

I hereby certify that on June 11, 2026, I electronically filed the foregoing with the

Clerk of the Court using the CM/ECF system, which will send a notice to all registered

parties.

*/s/ Kent A. Schaffer*
KENT A. SCHAFFER