TERMINATION AND RELEASE

January 9, 2026

Reference is hereby made to the agreement between 1017 Global Music LLC ("Company") and Lontrell Williams p/k/a Pooh Shiesty ("Artist") dated as of April 1, 2020 (the "Agreement").  The following, when signed by Artist and by Company (collectively the "Parties"), will constitute a full Termination and Release of the Agreement by the Parties. Except as otherwise provided herein, the terms used in this agreement shall have the same meanings and definitions as ascribed to them in the Agreement. For good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, and notwithstanding anything to the contrary expressed or implied in the Agreement, the following shall constitute a valid and binding agreement between the Parties with respect to the subject matter hereof (the "Binding Terms") effective as of January 9, 2026, (the "Effective Date").  The Parties agree as follows:

1.     The Agreement is hereby agreed to be of no force or effect and, without limiting the generality of the forgoing, is deemed to be void ab initio.

2.     Notwithstanding anything to the contrary set forth in the Agreement, the Term of the Agreement is hereby terminated as of the date hereof, in lieu of any other date set forth in the Agreement.

3.     Company hereby forever releases and discharges Artist from any and all claims, demands, actions, causes of action, suits, sums of money, accounts, covenants, agreements (including any and all prior or subsequent agreements and amendments to the Agreement), contracts, and promises in law or in equity, which Company now has, will have or at any time may have had, against Artist, or successors and assigns, whether known or unknown to Company, by reason of any matter, cause, or thing whatsoever from the beginning of the world to the date hereof, including, without limitation, any and all obligations to make or release any Recordings or to make any payments to Company or to any party deriving any rights from Company (including, without limitation, any individual producer or musician engaged in connection with the production of any albums by Company) under the Agreement. Company acknowledges that Artist will have no obligation to Company for any reason upon the execution of this termination and release.

4.     Artist hereby forever releases and discharges Company from any and all obligations under the Agreement, other than those that expressly survive the termination of such Agreement. However, for purposes of clarification, nothing contained in this agreement shall affect Company's obligation to account to Artist for royalties or Artist's right to conduct audits of Company's books and records in accordance with the Agreement, or, except as specifically released herein, Artist's obligations and Company's rights as provided for in the Agreement.

5.     Effective immediately upon the Effective Date, all right, title, and interest in and to any and all intellectual property created, authored, composed, recorded, written, produced, developed, or otherwise created by Artist, whether alone or jointly with others, including without limitation

all musical compositions, lyrics, sound recordings, master recordings, audiovisual works, artwork, logos, branding, and associated copyrights and neighboring rights (collectively, the "Artist IP"), shall be owned solely and exclusively by Artist, free and clear of any and all claims, liens, security interests, or encumbrances by Company. To the extent Company has ever acquired, claimed, administered, licensed, or held any ownership interest in the Artist IP (or any portion thereof), through this agreement, or otherwise, Company hereby irrevocably assigns and transfers to Artist all such right, title, and interest, including all copyrights and renewals, extensions, and all rights of termination, reversion, or recapture, effective as of the Effective Date. Company shall execute and deliver any documents reasonably requested by Artist to confirm or effectuate such assignment and ownership. Company acknowledges and agrees that, as of the Effective Date, any Artist IP that may have been characterized as a "work made for hire" or otherwise owned or controlled by Company shall be deemed fully reverted to Artist, and Company waives any claim that the Artist IP constitutes a work made for hire for Company.

6.      As it relates to Company's agreement Company hereby agrees to "pass through" to Artist all approval rights, controls and consultation rights granted to Company pursuant to the Atlantic Agreements (collectively, "Approval Rights"). All such Approval Rights (including, without limitation, recording elements of the Atlantic Recording Agreement) shall be exercised by Artist in Artist's sole discretion. For the avoidance of doubt, all business matters and decisions (including, without limitation, in connection with the negotiation of any amendments thereto) shall be exercised exclusively by Artist.

7.      Company hereby warrants and represents that:

       (a)      Company has the full right and power to enter in to and fully perform this agreement; and

       (b)      Company agrees to and does hereby indemnify, save and hold Artist harmless of and from any and all loss and damage (including reasonable attorney's fees) arising out of or connected with any breach by Company of any warranty, representation and/or agreement made by Company herein.  Company agrees to reimburse Artist on demand for any payment made by Artist at any time with respect to any claim or liability or for any loss incurred in respect of which Artist is entitled to be indemnified.

8.      Following the full execution hereof and subject to the terms hereof, Artist shall have the right negotiate in its sole discretion with Atlantic Records or any other third party for Artist's services.

9.      It is the parties' intention in entering into this agreement that the same shall be effective as a full and final accord and satisfaction and release of each and every matter referred to herein.  The parties further represent and warrant to the other that each is familiar with the provisions of California Civil Code §1542 and expressly waive and relinquish any and all rights and benefits that they may have under said §1542 to the fullest extent permitted by law.  Such section states that:

"A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, AND THAT IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY."

The parties acknowledge, represent and warrant that each has consulted with legal counsel before executing this agreement and that they each understand its meaning, including the effect of §1542 of California Civil Code and expressly consent that this agreement shall be given full force and effect according to each and all of its express terms and provisions, including those relating to the release of unknown and unsuspected claims, demands and causes of action (although nothing contained in this paragraph or elsewhere herein shall be deemed to make this agreement subject to California law).

10.  If any provision of this Agreement is held to be invalid, illegal, or unenforceable in any respect by a court of competent jurisdiction, the validity, legality, and enforceability of the remaining provisions shall not be affected or impaired. The parties agree that any such invalid, illegal, or unenforceable provision shall be deemed modified to the minimum extent necessary to make it valid and enforceable, and the Agreement shall be enforced as so modified.

11.    This agreement has been entered into in the State of New York, and the validity, interpretation, and legal effect of this agreement will be governed by the laws of the State of New York applicable to contracts entered into and performed entirely within the State of New York, with respect to the determination of any claim, dispute, or disagreement, which may arise out of the interpretation, performance, or breach of this agreement.
.
12.    This Agreement: (i) will be binding upon and inure to the benefit of the parties hereto and their respective successors, permitted assigns, heirs, estates, administrators and executors; (ii) embodies the sole and entire agreement of the parties in respect of, and supersedes all prior oral or written understandings between them concerning, the subject matter hereof; (iii) may not be canceled, amended, discharged or waived, in whole or part, except by a written instrument signed by all parties hereto

13.    This agreement may be executed in counterparts and by approved electronic signature (including AdobeSign) and delivered by facsimile or PDF.

*** SIGNATURE PAGE TO FOLLOW ***

Very truly yours,

By_____
       1017 Global Music LLC

ACCEPTED AND AGREED TO:

By_____
    Lontrell Williams p/k/a Pooh Shiesty